Alisa **FRALEY**, an infant, by David **FRALEY** and Brenda Fraley her next friends, Plaintiff,

v.

**LAKE WINNEPESAUKAH, INC. and Funtown, Inc., Defendants.**

**Civ. A. No. C85–43R.**

United States District Court, N.D. Georgia, Rome Division.

March 14, 1986.

Brian C. Smith, Chattanooga, Tenn., for plaintiff.

C. Wade Monk, William H. Boling, Jr., Rome, Ga., for defendants.

## ORDER

HAROLD L. MURPHY, District Judge.

This personal injury action is before the Court on the defendants' motion for summary judgment. Plaintiff was injured when she fell eight or nine feet from an amusement ride at Lake Winnepesaukah Amusement Park. For the reasons set forth below, the summary judgment motion of defendant Lake Winnepesaukah is granted. As issues of fact remain concerning Funtown's liability, Funtown's motion for summary judgment is denied.

## FACTS

Lake Winnepesaukah Amusement Park, located in Catoosa County, Georgia, is an amusement park leased and operated by Funtown, Incorporated. Funtown took over the operation of the park in 1977, when it leased the premises from the prior operator, Lake Winnepesaukah. In 1978, Funtown installed the Alpine Way Sky Ride ("Sky Ride").

The Sky Ride is fashioned after a ski lift. Two-person seats are suspended from a cable that runs along a pulley system attached to tall supports. The Sky Ride at Lake Winnepesaukah Amusement Park transports riders from a terminal at ground level up over a small lake. After crossing the lake, the chairs descend to within eight or nine feet of the ground. There is no terminal, however, and the chairs simply follow the cable around the end support and head back out over the lake the way they came. Riders disembark back at the terminal.

On August 12, 1982, plaintiff, then age 11, and her brother, then age 13, visited the amusement park. They were staying with their aunt at the time, who left them at the park for the day while she went to work. The children spent the day riding the rides and enjoying the other amusements offered in the park. Toward the end of the day, after riding the Mad Mouse, a roller coaster ride, they decided to ride the Sky Ride for a second time.

The chairs on the Sky Ride have a lap bar that can be raised or lowered. When the bar is lowered, riders cannot leave the chair. The children, in riding the Sky Ride for the second time, noticed that other children were raising the bar and jumping off the ride at the point where the chairs descended and turned around to go back across the lake. The two boys that they watched jump off the chair directly in front of them immediately ran to get in line for the Boat Chute, a log flume ride.

After watching the other children, plaintiff's brother raised the lap bar as he and the plaintiff approached the turn-around point. Plaintiff contends that at that time there was a jolt or jerk that caused her brother to fall from the chair and that she fell while grabbing after him. Plaintiff broke her ankle.

## DISCUSSION

■ Defendant Lake Winnepesaukah moves for summary judgment, alleging that it was merely a lessor of the premises and that it had fully parted with possession of the amusement park after 1977. Lake Winnepesaukah also points out that the Sky Ride was constructed after it had leased the premises. As plaintiff has presented no evidence to contradict Lake Winnepesaukah's showing that it was out of possession of the amusement park, Lake Winnepesaukah's tort liability is limited by O.C.G.A. § 44–7–14 (1982). Section 44–7–14 states that a landlord is not liable for the negligence of a tenant toward third

persons. The alleged negligence in this action was Funtown's. Lake Winnepesaukah's motion for summary judgment is granted.

Defendant Funtown moves for summary judgment, arguing that its premises, as they relate to the Sky Ride, were reasonably safe as a matter of law. Defendant cites *Augusta Amusements, Inc. v. Powell*, 93 Ga.App. 752, 92 S.E.2d 720 (1956), in support of its argument. In *Augusta Amusements*, a child of seven was injured sliding down the bannister of a movie theater. The Court held as a matter of law that the defendant was guilty of no negligence in keeping and maintaining its premises. *See id.* at 757–58, 92 S.E.2d 720.

In this case, a child of eleven was injured while riding an amusement ride. The Court is unable to conclude that, as a matter of law, the defendant exercised due care in keeping and maintaining its premises. Arguably, at least, the Sky Ride was constructed such that it had the appearance of serving as transportation from one side of the park to the other. It left the terminal near the Mad Mouse, rose up to pass over the lake, and then descended back toward the ground near the entrance to the Boat Chute ride. With the Boat Chute beckoning, the configuration of the Sky Ride could be viewed as enticing children to attempt the seemingly short jump to the ground.

As the court stated in *Augusta Amusements, supra*, children are entitled to a degree of care proportioned to their ability to foresee and avoid peril. Thus the law imposes a greater duty upon a landowner to exercise due care toward children. In light of this higher standard of care, the Court cannot determine this issue as a matter of law. In Georgia, the question of negligence is almost always a question for the jury. *See* O.C.G.A. § 51–1–2 (1982) (annot. "Negligence as Jury Question").

Funtown also argues that it is entitled to summary judgment because plaintiff assumed the risk of injury. In *Abee v. Stone Mountain Memorial Association*, 252 Ga. 465, 314 S.E.2d 444 (1984), an eleven year old child was injured sliding down a water slide. The plaintiff flipped over the side of the water flume and fractured his jaw. The supreme court held that the plaintiff assumed the risk of obvious hazards that are necessary to the purpose of the "thrill ride." *Id.* at 465, 314 S.E.2d 444.

In *Atlanta Funtown, Inc. v. Crouch*, 114 Ga.App. 702, 152 S.E.2d 583 (1966), a high school senior complained of injuries received when she was thrown about a roller-coaster car. The court found that the plaintiff presented no evidence that the ride was operated in any way other than as it was designed to operate. As the plaintiff made no allegations that the design of the ride was defective, the court granted defendant's motion for summary judgment. The court reasoned that the landowner had no greater knowledge than the plaintiff as to the hazard of which plaintiff complained, and that plaintiff had assumed the risk of that hazard.

In this case, the hazard that caused plaintiff's injury's did not arise out of the normal operation of the Sky Ride. As defendant notes, the normal operation of the Sky Ride, as compared to a water slide or roller coaster, would be quite safe and tame. The hazard that caused plaintiff's injury was the hazard created by children jumping from the ride before the ride ended. Under the assumption of the risk doctrine stated in the cases above, the Court cannot conclude that plaintiff assumed the risk of the hazard that led to her injury.

The defendant also argues that plaintiff's injury was proximately caused by her brother's raising the safety bar while the ride was still in progress. The defendant likens the situation to the situation presented in *Lincoln v. Wilcox*, 111 Ga.App. 365, 141 S.E.2d 765 (1965). In *Lincoln v. Wilcox*, the plaintiff, while swimming at defendant's public pool, was injured by another swimmer who dove on top of her. The court held that the facts alleged did not show any failure by the owner of the pool to exercise care in the supervision of the premises. *See id.* at 368, 141 S.E.2d 765.

The court in *Lincoln v. Wilcox* went on to state, as defendant notes, that a landowner is not liable, even to children, "for injuries resulting solely from misuse of otherwise safe premises by a third party, where such misuse is unknown to the owner and unanticipated by him." *Id.* at 368–69, 141 S.E.2d 765. In this case, there is evidence in the record to suggest that the general manager of Funtown was aware of the misuse of the Sky Ride. In light of this knowledge, plaintiff has alleged sufficient facts to avoid summary judgment on the issue of defendant's exercise of due care.[1]

■ Finally, defendant argues that plaintiff's contributory negligence, as well as the doctrine of plaintiff's last clear chance, bars any recovery in this case. A child is required to exercise "such care as the child's mental and physical capacities enable him to exercise in the actual circumstances of the occasion and situation under investigation." O.C.G.A. § 51–1–5 (1982). As did the supreme court in *Ashbaugh v. Trotter*, 237 Ga. 46, 226 S.E.2d 736 (1976), this Court finds that the question of the plaintiff's negligence in this case is for the jury. *Id.* at 47, 226 S.E.2d 736.

As for the doctrine of plaintiff's last clear chance, it is inapplicable on the facts of this case. Under Georgia law, a plaintiff is barred from a recovery if the plaintiff failed to exercise ordinary care to avoid the consequences of the defendant's negligence after it was known to him. O.C.G.A. § 51–11–7 (1982); *Seaboard C.L.R. Company v. Daugherty*, 118 Ga.App. 518, 164 S.E.2d 269 (1968). The alleged negligence of the defendant in this action is its failure to control the misuse of its ride. This negligence was not known to the plaintiff.

### SUMMARY JURY TRIAL

In the preliminary statement in this case, the parties indicated that some possibility of settlement exists. The Court notes, however, that this case is difficult to evaluate for settlement purposes. If the parties remain interested in settling the case, the Court will suggest a summary jury trial. A summary jury trial would allow the parties to test the reaction of a jury to their case without being bound by the jury's decision. If the parties can then settle the case, a full blown and costly trial would be avoided.

Counsel for the parties are directed to confer and report to the Court their interest in a summary jury trial. Pursuant to Fed.R.Civ.P. 16(c)(7), the Court will hear from counsel as to whether a summary jury trial would help in the disposition of this case. Although the Court is unaware of other attempts in this District to employ this alternative dispute resolution technique, the summary jury trial has been employed in other districts with much success.

A summary jury trial consists fundamentally of counsel's presentations of their views of the case to a jury and the jury's subsequent decision based on the presentations. It is an amalgam of opening and closing arguments with an overview of the

---

1. A more recent application of the principles enunciated in *Lincoln v. Wilcox* is found in *Elliott v. Burkhalter*, 173 Ga.App. 749, 327 S.E.2d 858 (1985). In that case, a customer of a beauty shop was struck by a child on a bicycle upon exiting the shop onto the sidewalk. The court held that the owner of the beauty shop was under no duty to its customers to patrol the sidewalk to keep it clear of children on bicycles. Thus, absent knowledge of the specific child on the bicycle that caused the accident, the court refused to impose liability on the shopowner.

In the present case, a jury could find that, in the exercise of due care, the defendant should have done more to stop the misuse of its Sky Ride. That issue remains for adjudication. The Court can neither conclude as a matter of law that the defendant had no knowledge of the misuse of the Sky Ride, nor that the defendant exercised due care in preventing misuse of the Sky Ride. *See generally Savannah Theatres Company v. Brown*, 36 Ga.App. 352, 136 S.E.2d 478 (1926) (cause of action stated by plaintiff who alleged that theater owner should have controlled a boisterous group of small boys who caused her to fall down a flight of stairs). *Cf. Bowling v. Janmar, Inc.*, 142 Ga.App. 53, 234 S.E.2d 849 (1977) (landowner not negligent in failing to protect invitee from sudden and unprovoked attack); *Belk-Hudson Co. v. Davis*, 132 Ga.App. 237, 207 S.E.2d 528 (1974) (store owner not liable for injury to customer who was allegedly pushed by small children).

expected trial proofs. No testimony is taken from sworn witnesses. Counsel may restate the anticipated testimony of trial witnesses and are free to adduce exhibits for the jury. Because of the non-binding nature of the proceedings, evidentiary and procedural rules are few and flexible. Tactical maneuvering is kept to a minimum.

The summary jury trial proceeding itself should be concluded in a half day. It is essential that counsel have their case in a state ready for trial. The Court would notify the parties several weeks in advance of the summary jury trial and would hold a pretrial conference.

Clients or officers of clients with authority to negotiate a settlement would be required to attend the summary jury trial.

A jury venire sufficient to provide six jurors would be called. Counsel would be provided with a short profile of each juror stating: the juror's name and occupation, marital status, spouse's name and occupation, names and ages of children, previous knowledge of any of the parties, counsel, or nature of the case, and any prejudicial attitudes to the nature of the action. The Court would interrogate the full panel and counsel would be permitted to exercise a limited number of challenges. Alternates would not be necessary.

Subject to some adaptation at a pretrial conference, counsel would be given one hour each for their presentation. Plaintiff could reserve a limited time for rebuttal. If new elements were raised in rebuttal, defendants would be permitted time to respond.

In making their statements to the jury, counsel are limited to representations as to evidence that would be admissible at trial. While counsel are permitted to mingle representations of fact with legal argument, considerations of responsibility and restraint must be observed. Counsel may only present factual representations supportable by reference to discovery materials, including depositions, stipulations, signed statements of witnesses, or other documents, or by a professional representation that counsel personally spoke with the witness and is repeating what the witness stated. Statements, reports, and depositions may be read from, but not at undue length.

Physical evidence, including documents, may be exhibited during a presentation and submitted for the jury's consideration during deliberations. Such exhibits are not marked, and at the end of the hearing are returned to the party tendering them.

Objections are not encouraged. However, in the event counsel oversteps the bounds of propriety as to a material aspect of the case, an objection will be received and, if well-taken, the jury admonished.

At the conclusion of the presentations the jury would be given an abbreviated charge, and would retire for its deliberations. The jury would be encouraged to return a unanimous verdict, and would be given ample time to reach such an agreement. If, however, they are unable to reach a consensus, they are asked to return a special verdict, anonymously listing individual perceptions of liability and damages.

If the action is not resolved by counsel at or immediately following the proceeding, a pretrial hearing will be held shortly thereafter to discuss settlement. If the case is not resolved, the action will be called for trial within thirty days of the summary jury trial.

ACCORDINGLY, defendant Lake Winnepesaukah's motion for summary judgment is GRANTED. Defendant Funtown's motion for summary judgment is DENIED. The parties shall confer and indicate if they wish to pursue settlement through a summary jury trial within 20 days.